**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT FRANKFORT**

| | |
|---|---|
| **CHRISTOPHER DAVID**<br>**Plaintiff,**<br><br>**v.**<br><br>**FRANKLIN COUNTY, KENTUCKY, *et al.***<br>**Defendants.** | **CASE NO. 3:23-CV-28-KKC**<br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on the Defendants' and Third-Party Defendants' Motions for Summary Judgment and Motions in Limine. (R. 93, 94, 95, 96, 97.) Now that these motions are fully briefed, they are ripe for the Court's review. For the following reasons, the Third-Party Defendants' Motion for Summary Judgment (R. 93) will be GRANTED, the Defendants' Motion for Summary Judgment against the Plaintiff (R. 95) will be GRANTED, and the Defendants' Motion for Summary Judgment against the Third-Party Defendants (R. 96) will be DENIED as moot. Further, the Third-Party Defendants' Motion in Limine (R. 94) and the Defendants' Motion in Limine (R. 97) will be DENIED as moot.

## I. FACTUAL BACKGROUND

This action arises from two traffic stops conducted by Defendant Deputy Phillip Ray in the early morning hours on April 18, 2022. Deputy Phillip Ray of the Franklin County Sherriff's Office conducted a traffic stop of Plaintiff Christopher David after observing David speeding and using a communication device while driving. (R. 1 at 3.) After Deputy Ray issued a traffic citation to David, Deputy Ray claims that David "pulled off at a high rate of speed with [Deputy Ray] directly beside the vehicle," nearly striking Deputy Ray. (*Id.* at 4.) Because of David's perceived erratic driving, Deputy Ray returned to his vehicle, pursued

David, and pulled David over a second time. (*Id.*) According to David, Deputy Ray then "yanked [him] from the vehicle and began to strike him about his head, face and back," although David maintains that he did not threaten, resist, or attempt to flee the officers. (*Id.*) During discovery, David further claimed that Deputy Ray attempted to taze him inside the vehicle and beat him on his head and body while in the vehicle. (R. 95-17.) David also alleged that once outside the vehicle, Deputy Ray tased him again and beat him on his head, shoulders, and back while his hands were being placed in handcuffs. (*Id.*)

The body camera footage provided tells a more complete, if slightly different, story, however.[1] The footage obtained from Deputy Ray's body camera depicts David taking the traffic citation from Deputy Ray and departing the scene in his vehicle. (R. 95-4.) Although it does not appear that David sped off erratically or nearly struck Deputy Ray, as David pulled away with his passenger side window still open, Deputy Ray can be heard demanding that David stop his vehicle. (*Id.*) Deputy Ray then pursued David in his vehicle with lights and sirens on and conducted a second traffic stop. (*Id.*) While pursuing David, Deputy Ray radioed for assistance from other law enforcement officers in the area. (*Id.*) David eventually pulled his vehicle onto the shoulder a second time and Deputy Ray approached the driver side of vehicle demanding that David exit the vehicle and informed David that he was under arrest. (*Id.*) David remained inside the vehicle, videoing the encounter with his cell phone and asking to speak to a supervisor. (*Id.*) David claims that he refused to exit the vehicle because he did not know why he had been pulled over a second time, and Deputy Ray's enraged demeanor, coupled with Deputy Ray's grasp on his gun frightened David and caused him to fear for his life. (R. 114-3 at 150–52.)

[1] The following facts are compiled upon the Court's review of footage obtained from the body worn cameras of Deputy Ray, Officer Gaines, and Officer Smith. The Franklin County Parties filed this footage conventionally, alongside their Motion for Summary Judgment against the Plaintiff. (*See* R. 98.)

After unsuccessfully demanding David's compliance, Deputy Ray returned to his vehicle and radioed that David was resisting arrest and refusing to get out of his car. (R. 95-4.) After less than a minute had passed, more officers arrived on the scene, including Officer Christopher Gaines and Officer Hunter Smith of the Frankfort Police Department. (*Id.*) David asserts that during this intermission, fearing for his life, he stopped videoing the encounter and called 911. (R. 114-3 at 152.) Officers Gaines and Smith approached the passenger side of David's vehicle and attempted to gain entry by pulling on the door handles, to no avail. (R. 95-9, 95-11.) Officer Smith demanded that David unlock and open the door, but David refused. (*Id.*) Deputy Ray then used his baton to break David's driver side window and gained hold of David's left arm. (R. 95-4.) Then, Officer Gaines broke the passenger side window, reached through the window to unlock the vehicle door, and opened the door. (R. 95-11.) David still refused to exit the vehicle and can be heard talking to a 911 operator requesting assistance from said operator. (*Id.*) Officer Gaines then deployed his taser from the passenger side of the vehicle, with one probe striking David's right arm and the other becoming lodged in David's seatbelt. (*Id.*)

At this time, David tells Officer Smith and Deputy Ray that he cannot exit the vehicle because his seatbelt is restraining him and Deputy Ray has hold of his arm, but he informs the officers that his driver side door is unlocked. (R. 95-9.) Officer Smith then unlocks David's door and unbuckles David's seatbelt, at which time David can be heard stating, "Please don't shoot me. I will get out of the car." (*Id.*) Officer Smith and Deputy Ray then removed David from the vehicle and a scuffle ensued which resulted in both David and Officer Smith next to one another on the ground. (*Id.*) Officer Smith then delivered the first round of closed fist strikes to David's face at which time Deputy Ray positioned himself on top of David. (*Id.*) Deputy Ray placed his right knee on David's back and his left hand on David's neck while Officer Smith attempted to grab David's arms and place him in handcuffs. (R. 95-

4, 95-9, 95-11.) Still apparently unable to gain David's compliance, Officer Smith delivered a second round of closed fist strikes to David's face. (R. 95-9). Officer Smith asserts that these strikes were in response to David's apparent attempt to grasp Officer Gaines' leg, although such grasp cannot be seen in the footage provided. (R. 95-13 at 2.)

At this point, Officer Gaines deployed his taser on David, striking him in the back. (R. 95-11.) After being tased, the officers were able to secure David in handcuffs and ultimately gain his compliance. (*Id.*) Throughout the encounter, Officers Smith and Gaines, as well as Deputy Ray can be heard commanding David not to resist, and David can be heard saying that he is not resisting. (R. 95-4, 95-9, 95-13.) Once handcuffed, officers walked David towards Deputy Ray's vehicle and the situation diffused considerably. (*Id.*) David informed officers that he had a firearm located in his glove box, once again requested a supervisor, and asked to secure the equipment in his vehicle needed for his job. (R. 95-9, 95-11.) While David waited peacefully for transport, Deputy Ray approached David yelling expletives regarding officer safety, prompting another officer to separate Deputy Ray and David. (R. 95-11.)

Deputy Ray then transported David to Frankfort Regional Medical Center (FRMC) for examination. (R. 95-4, 95-15.) David complained of forehead, facial, and back pain, and treatment records note that David had a small hematoma on his forehead. (R. 95-15 at 3.) An electrocardiogram yielded normal results, and David declined other diagnostics and treatment. (*Id.*) Upon discharge from FRMC, Deputy Ray transported David to a jail for booking. (R. 95-4.) On the ride to the jail, David complained to Deputy Ray of the alleged excessive force used to arrest him, to which Deputy Ray told David that he would come to every court appearance and looked forward to seeing David in court. (*Id.*) Based on the events that led to his arrest, David faced charges of wanton endangerment and resisting arrest, and he eventually entered an *Alford* plea in Franklin Circuit Court to resisting arrest, in violation of K.R.S. §520.090. (R. 93-3.)

On April 14, 2023, David initiated this suit against Deputy Ray, Sherriff Chris Quire, and Franklin County, Kentucky (collectively, the "Franklin County Parties"). (R. 1.) David raised four distinct causes of action: (1) constitutional violations under 42 U.S.C. §1983 against all Franklin County Parties, (2) negligence and gross negligence against Deputy Ray and Sherriff Quire, (3) assault and battery against Deputy Ray, and (4) abuse of public office under K.R.S. §§ 446.070, 522.010, and 70.040 against Sheriff Quire and Franklin County. *Id.* The Franklin County Parties moved to dismiss Counts Two and Four of the Complaint, which the Court granted in part. (R. 8, 13.) The Court dismissed Count Two of David's Complaint as to Deputy Ray, Count Four of David's Complaint as to all of the Franklin County Parties, and to the extent David sued the Franklin County Parties in their official capacities, the Court dismissed those claims as well. (R. 13). Thus, David's remaining claims are: (1) a §1983 claim against all of the Franklin County Parties, (2) an assault and battery claim against Deputy Ray, and (3) a negligence and gross negligence claim against Sheriff Quire.

On August 29, 2024, the Franklin County Parties moved for leave to file a Third-Party Complaint against Christopher Gaines and Hunter Smith, the two Frankfort Police Department Officers who were involved in the events of the second traffic stop, as well as Unknown Police Officer No. 1 and Unknown Police Officer No. 2 (collectively, the "City Officers"). (R. 31.) The Court granted the motion, and on September 24, 2024, Officers Gaines and Smith, as well as the two Unknown Police Officers were joined in this action as Third-Party Defendants. (R. 35, 36.) The Franklin County Parties contend in their Third-Party Complaint that, to the extent the Franklin County Parties are liable to David, they are entitled to indemnification by the City Officers. (R. 36 at 8.) The Franklin County Parties later moved to amend their Third-Party Complaint, omitting the two Unknown Officers, which the Court granted. (R. 48, 54.) The City Officers then moved to dismiss the Third-

Party Complaint, which this Court denied, finding that the Franklin County Parties had plausibly pled common law indemnification. (R. 56, 69.)

The case proceeded through discovery, up until the filing of the instant motions for summary judgment. The remaining City Officers first moved for summary judgment against the Franklin County Parties, contending that David's claims are not viable, and with no underlying claim, the City Officers have no duty to indemnify the Franklin County Parties. (R. 93.) The Franklin County Parties then moved for summary judgment against both David and the City Officers. (R. 95, 96.) The Franklin County Parties contend that they are entitled to judgment as a matter of law as to all of David's claims. (R. 95.) However, in the event they are subject to liability, the Franklin County Parties alternatively assert that they are entitled to indemnification from the City Defendants. (R. 96.) These motions have now been fully briefed and are ripe for review.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Morales v. Am. Honda Motor Co.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

Further, when a purported incident of excessive force is captured on film, a court in the summary judgment posture should rely on the undisputed footage to determine whether the force was reasonable as a matter of law. *See Ashford v. Raby*, 951 F.3d 798, 800 (6th Cir. 2020) ("In describing what happened, we rely mainly on undisputed video footage from police dashboard cameras on the scene. We adopt the plaintiff's version of any facts not caught on film."); *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) ("At the summary judgment stage . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record . . . the reasonableness of [the defendant's] actions . . . is a pure question of law."); *Dunn v. Matatall*, 549 F.3d 348, 353 (6th Cir. 2008) ("Dunn argues that a jury must watch the video and decide whether the Officers used excessive force. This argument, however, is directly contradicted by *Scott*, which instructs us to determine as a matter of law whether the events depicted on the video, taken in the light most favorable to Dunn, show that the Officers' conduct was objectively reasonable."). However, any "gaps or uncertainties" in the video are construed in favor of the nonmovant. *Franke v. Janes*, 168 F.4th 797, 805 (6th Cir. 2026) (quoting *Naji v. City of Dearborn*, 120 F.4th 520, 523 (6th Cir. 2024)).

## III. ANALYSIS

### A. Excessive Force under 42 U.S.C. § 1983

Although the Franklin County Parties and City Officers raise several arguments as to the merits of David's §1983 excessive force claim, the Court must first consider whether David's claim is barred by the *Heck* doctrine. *See Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff may not bring §1983 claim that, if successful, "would necessarily

imply the invalidity" of a criminal conviction or sentence, unless that conviction has been invalidated by direct appeal, executive clemency, habeas corpus, or other means. *Id.* at 486–87. Notably, the Supreme Court has emphasized that a claim barred by the *Heck* doctrine "has not yet arisen" and is thus not cognizable under §1983. *Id.* at 489. Accordingly, the *Heck* doctrine "functions as a substantive bar to accrual—not merely a defense—and mandates dismissal without prejudice." *Murray v. Jones*, 2025 WL 1507011, at *3 (E.D. Ky. May 27, 2025) (citing *Callihan v. Schneider*, 178 F.3d 800, 804 (6th Cir. 1999)).

In *Heck*, the Supreme Court held that, in considering a §1983 claim brought by a plaintiff with a conviction related to the events at issue in the civil suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," and if so, "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. In the context of an excessive force claim, the Sixth Circuit has recognized two circumstances in which the claim would conflict with a conviction: (1) the criminal offense includes the absence of excessive force as an element, or (2) excessive force would have served as an affirmative defense in the criminal case but was not raised. *Schreiber v. Moe*, 596 F.3d 323, 334; *Cummings v. City of Akron*, 418 F.3d 676, 684 (6th Cir. 2005).

Here, David entered an *Alford* plea to resisting arrest, resulting in a conviction under K.R.S. §520.090. (R. 93-3.) K.R.S. § 520.090 provides that "[a] person is guilty of resisting arrest when he intentionally prevent or attempts to prevent a peace officer . . . from effecting an arrest of the actor or another by" either: "(a) [u]sing or threatening to use physical force or violence against the peace officer or another" or "(b) [u]sing any other means creating a substantial risk of causing physical injury to the peace officer or another." Ky. Rev. Stat. Ann. § 520.090. Thus, as this Court has held previously, the absence of excessive force is not

an element of Kentucky's resisting arrest statute, and the first *Schreiber* prong does not apply. *Everage v. Gayheart*, 800 F.Supp.3d 759, 767 (E.D. Ky. 2025); *see also Murray*, 2025 WL 1507011, at *4.

The second *Schreiber* prong, however, applies when excessive force would have served as an affirmative defense in the criminal case but was not raised. 596 F.3d at 334. Under Kentucky law, an individual may claim self-defense to a charge of resisting arrest if the officer used "unlawful physical force," to effect the arrest, meaning more force than was reasonably necessary. Ky. Rev. Stat. Ann. § 503.060(1); *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004). Thus, faced with a charge of resisting arrest, David could have defended against that charge by asserting that the officers used "more force than [] reasonably necessary to effect the arrest," that is, used excessive force. *Id.* Upon review of the state court record, David chose not to raise this defense and instead entered an *Alford* plea to the resisting arrest charge.

The Sixth Circuit, as well as the district courts in this Circuit that have had the occasion to consider the issue, have consistently held that a plaintiff who could have raised excessive force as an affirmative defense to a resisting arrest charge but did not, may not bring a subsequent §1983 claim asserting that the force used was excessive, as this would necessarily imply the invalidity of the conviction. *Cummings*, 418 F.3d at 683; *Everage*, 800 F.Supp.3d at 768; *Murray*, 2025 WL 1507011, at *4; *Burke v. Forbis*, 2021 WL 2418574, at *2-3 (W.D. Ky. June 14, 2021); *Philips v. Curtis*, 765 F. App'x 130, 131-32 (6th Cir. 2019) ("Generally speaking, for example if an individual is convicted of resisting arrest, that conviction bars claims that the police used excessive force during an arrest. A victory in a damages suit would mean that the officer used force improperly, while the conviction for

resisting arrest would dictate the opposite conclusion. That is a classic *Heck* problem."). Thus, David's §1983 claim falls squarely within the confines of claims barred by *Heck*.

David argues that *Heck* does not bar his claim for several reasons. First, David avers that *Heck* only applies to malicious prosecution claims under § 1983, the claim on which *Heck* itself was premised. (R. 109-1 at 7.) However, this argument is belied by David's own authorities. David first cites *DiBlasio v. City of New York*, 102 F.3d 654 (2d Cir. 1996), an out-of-circuit case that pronounced no such limitation on *Heck*. The Second Circuit in *DiBlasio* applied *Heck* to a malicious prosecution claim but made no remark on the applicability of *Heck* outside that context. 102 F.3d at 658-59. David next cites *Spencer v. Kemna*, 523 U.S. 1 (1998) which again, says nothing about the applicability of *Heck* outside the malicious prosecution context.

In *Kenma*, the Supreme Court opined on whether the loss of the ability to pursue a § 1983 claim barred by *Heck* constituted an injury for purposes of constitutional standing. 523 U.S. at 17. David implies that *Kemna* restricted the application of *Heck*, but that misreads the Court's reasoning. (R. 109-1 at 7.) Rather, the Court noted that an attack on the procedures used to obtain a conviction, rather than the result reached would not necessarily imply the invalidity of the conviction, and thus, be barred by *Heck*. *Id.* But the Court said nothing regarding the applicability of *Heck* to claims other than malicious prosecution and announced no limitation on *Heck* generally. *See id.* Thus, David has provided no authority to support his proposition, and, in fact, David later relies upon *Schreiber*, an in-circuit case which explicitly states that *Heck* may apply to excessive force claims under § 1983, so long as the claim implies the invalidity of the prior conviction. 596 F.3d at 334. Consequently, David's argument as to the applicability of *Heck* to his claim holds no weight.

Second, David asserts that his claim is not barred by *Heck* because the claim relates to Deputy Ray's excessive force before, during, and after David's arrest, specifically Ray's "intimidation and mistreatment" of David after his arrest. (R. 109-1 at 7–8.) This temporal argument warrants some consideration, as the Sixth Circuit has held that "*Heck* does not bar § 1983 suits alleging *post-arrest* excessive force." *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 611 (6th Cir. 2014) (emphasis in original); *see also Wagner v. City of Canton, Ohio*, 2020 WL 1514551, at *3 (N.D. Ohio Mar. 30, 2020) ("the applicability of *Heck* is based on the timing of the alleged excessive force."); *Shelton v. Greer*, 2022 WL 3439390 (W.D. Ky. Aug. 16, 2022).

While alleged excessive force before and during the arrest may be raised as an affirmative defense to a charge of resisting arrest, and is thus barred by *Heck*, post-arrest events may not meet the same fate. *Michaels v. City of Vermillion*, 539 F.Supp.2d 975, 992 (N.D. Ohio 2008) ("When the alleged excessive force is used *after* the suspect ceases resisting arrest, the *Heck* rule does not apply.") (emphasis in original) (citation omitted). The Sixth Circuit has explained that *Heck* does not bar post-arrest force because post-arrest force would not serve as an affirmative defense to the resisting arrest charge. *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *4 (6th Cir. Jan. 31, 2000) (table). Thus, the Court "must carefully examine the facts and the temporal sequence of the underlying offense and the alleged unconstitutional conduct to determine whether 'the alleged excessive force is used *after* the suspect ceases resisting arrest.'" *Hayward*, 759 F.3d at 612 (quoting *Michaels*, 539 F.Supp.2d at 992).

Accordingly, David correctly notes that any post-arrest force Deputy Ray inflicted on David would not be barred by *Heck* because such force could not have served as an affirmative defense to David's resisting arrest charge. However, upon review, despite claiming that he

does, David does not allege any force used by Deputy Ray after David ceased resisting arrest. All of the force alleged by David, the blows to his face and back and the use of a taser, occurred prior to his arrest. Once the officers were able to secure David's compliance and the situation de-escalated, the officers used no physical force on David, and David does not contend otherwise. The only post-arrest "use of force" asserted by David occurred when Deputy Ray approached David and began yelling, until an officer stepped in between them. (R. 109-1 at 4, 115.) David classifies this as an "aggressive verbal assault" and believes that gives rise to § 1983 liability. (R. 109-1 at 4.) Then, while Deputy Ray transported David from the hospital to the jail, David remarked that he would bring suit for Deputy Ray's conduct, to which Deputy Ray replied that he would attend every court date, and looked forward to seeing David in court. (R. 109-1 at 4, 115.) David characterizes these remarks as "threatening." (R. 109-1 at 4).

While the Court certainly does not endorse shouting expletives at a detainee after an arrest has been effected, these remarks, standing alone, do not give rise to § 1983 liability. *See e.g. King v. McCreary Cnty. Jail*, 2005 WL 1514304, at *9 (E.D. Ky. June 24, 2005) ("Although verbal abuse by officials is not condoned, the law is clear that verbal abuse by itself does not violate the Constitution.") (collecting cases). As one Court has remarked, "verbal abuse may constitute part of series of conduct that constitutes excessive force." *Brooks v. Pitchford*, 2015 WL 3466240, at *3 (W.D. Ky. June 1, 2015). However, "verbal abuse alone does not rise to the level of a constitutional violation. *Id.* (quoting *Schrader v. Patrick*, 181 F.3d 103, 1999 WL 266252, at *3 (6th Cir. Apr. 22, 1999) (table).

An excessive force claim necessarily requires that the officer apply some level of force, and verbal remarks alone do not rise to level of force required to sustain a § 1983 claim, as they are not "force" at all, as that word is understood in this context. *See e.g. Camarca v. City of Covington*, 2025 WL 1143255, at *6 (E.D. Ky. Apr. 16, 2025) (citing *Rodriquez v.*

*Passinault*, 637 F.3d 675, 687 (6th Cir. 2011) ("It is axiomatic to an excessive force claim that some level of force was actually applied and that some physical injury resulted."). Thus, to the extent that David's § 1983 claim relates to events that occurred subsequent to his arrest, the alleged conduct did not involve the application of any force or any physical injury suffered by David. To that end, David's arguments as to the sequence of the events, while legally correct, are inapplicable to the facts of the instant case.

Finally, David contends that *Heck* does not apply to cases in which the plaintiff entered an *Alford* plea, rather than pleading guilty or being adjudged guilty after a jury trial. (R. 109-1 at 8–9.) David further emphasizes he entered an *Alford* plea for the purpose of avoiding admitting outright guilt to resisting arrest and if he desired to forego his ability to pursue civil litigation against the Franklin County Parties, he would have pled guilty outright. (*Id.* at 9.) An *Alford* plea refers to a defendant that pleaded guilty while simultaneously maintaining his innocence. *Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 391 n.1 (6th Cir. 2022); *North Carolina v. Alford*, 400 U.S. 25, 34–39 (1970). A criminal defendant may have many reasons to enter a plea of guilty without outright admitting his guilt, but the practical effect of an *Alford* plea mirrors that of a guilty plea in all material respects. *See United States v. Tunning*, 69 F.3d 107, 110 (6th Cir. 1995) (". . .we believe it important to bear in mind that in either situation the defendant's plea is guilty. . ."). In either instance, the defendant "intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Id.* (quoting *Alford*, 400 U.S. at 37. Thus, an *Alford* plea generally carries with it the same legal consequences as an outright guilty plea.

Whether David subjectively appreciated that by entering an *Alford* plea to the resisting arrest charge he would give up his ability to bring suit for excessive force is of no

consequence. At bottom, admission of guilt is not a prerequisite for application of the *Heck* doctrine and David has provided no legal or factual support to contend otherwise. In fact, courts in this circuit routinely apply the *Heck* doctrine when the conviction was obtained by *Alford* plea or no contest plea. *See e.g. Sawyer v. Boone Cnty., Ky.*, 2024 WL 4860828, at *4 n. 5 (E.D. Ky. Nov. 21, 2024) (quoting *Havens v. Johnson*, 783 F.3d 776, 784 (6th Cir. 2015) ("the *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admission by the defendant), so it is irrelevant that [the plaintiff] entered an *Alford* plea."); *Cummings*, 418 F.3d at 682-83 (applying the *Heck* doctrine to a no contest plea); *Rogers v. Reed*, 2018 WL 4952484, at *3 (S.D. Ohio Oct. 12, 2018) ("[F]or purposes of *Heck*, an *Alford* plea or a no contest plea (a nolo contendre plea) is a plea of guilty that constitutes a criminal conviction.") (collecting cases).

In sum, David could have raised excessive force as an affirmative defense to his resisting arrest charge. Because he did not, his claim is barred, as judgment in his favor would imply the invalidity of his conviction, and the Franklin County Parties, are entitled to judgment as a matter of law with respect to David's excessive force claim. As a final matter, the Court must dismiss this claim without prejudice, as the application of *Heck* means the excessive force claim is "not yet legally cognizable." *Murray*, 2025 WL 1507011, at *6 (quoting *Callihan*, 178 F.3d at 804). Consequently, the Court lacks the authority to reach the merits of the excessive force claim as doing so would be merely advisory. *Id.* Even where defendants have raised alternative grounds for dismissal, courts routinely decline to reach those grounds when *Heck* squarely bars the claim. *Id.* at 7; *see also Hayward*, 759 F.3d at 613 (declining to reach the statute of limitations issue where *Heck* applied); *McDonough v. Smith*, 588 U.S. 109, 119–20 (2019) (noting that *Heck* bars accrual of the claim such that the timeliness issue

may not be considered); *Michaels*, 539 F.Supp.2d at 994 (declining to reach qualified immunity issue when *Heck* barred the excessive force claim).

Of course, *Heck* may serve as a permanent bar to David's excessive force claim. If his conviction were never overturned or invalidated, the excessive force claim will remain unaccrued in perpetuity. Such is the direct result of *Heck*, which "rests on the principle that civil courts may not render damages judgments that contradict still-valid criminal convictions." *Murray*, 2025 WL 1507011, at *7. Because David's excessive force claim has not accrued, the Court cannot wade further into the merits of his claim. As such, the Court will grant summary judgment in favor of the Franklin County Parties as David does not presently have a viable claim for excessive force; however, David's claim must be dismissed without prejudice.

**B. Assault & Battery under Kentucky Law**

Turning to David's next claim of assault and battery against Deputy Ray, the Franklin County Parties assert that this claim against Deputy Ray must fail for two reasons. First, the Franklin County Parties argue that the force complained of by David, being tased and struck in the face with closed fists, was inflicted by Officers Smith and Gaines, not Deputy Ray, and Officers Smith and Ray are not named as defendants in this action. (R. 95-1 at 25.) Second, the Franklin County Parties contend that Deputy Ray used necessary, legally justified force to subdue David. *Id.* The City Officers, on the other hand, claim that David's claims are barred by issue preclusion, as David has entered an *Alford* plea to resisting arrest in Franklin Circuit Court. (R. 93-1 at 7-12.) David disagrees, arguing that he had provided "sufficient . . . evidence to support his allegation that he was assaulted and battered by Deputy Ray." (R. 113-1 at 23.) David also provides a litany of arguments as to why issue preclusion does not bar his claim. (R. 109-1 at 10–12.)

Again, the Court need not wade into the merits of these contentions because David's state law claims of assault and battery are barred on the same grounds as his § 1983 excessive force claim. Under Kentucky law, assault "requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Lawrence v. Madison Cnty.*, 176 F.Supp.3d 650, 661 (E.D. Ky. 2016) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001)); *see also Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (internal quotation omitted). In possible tension with these principles, a law enforcement officer may use some amount of force in lawfully performing an arrest without subjecting themselves to liability. *Thomas v. Walker*, 2022 WL 989011, at *12 (E.D. Ky. Mar. 31, 2022) (citing Ky. Rev. Stat. §503.040)). Specifically, an officer "making an arrest may use such force as may be necessary to make the arrest but no more." *Hartman v. Thompson*, 931 F.3d 471, 486 (6th Cir. 2019) (quoting *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. App. 1973)); *see also* Ky. Rev. Stat. Ann. § 431.025(3) ("No unnecessary force or violence shall be used in making an arrest.").

To that end, the Kentucky Supreme Court often refers to non-justified force pursuant to arrest as "excessive force." *Everage*, 800 F.Supp.3d at 770 (citing *Dunn v. Felty*, 226 S.W.3d 68, 74 (Ky. 2007)); *see also Thomas*, 2022 WL 989011, at *12. As discussed above, Kentucky law allows a criminal defendant to claim self-defense to a charge of resisting arrest if the officer used more force than reasonably necessary to effect the arrest. David made no such claim in the face of his state charges. As such, a finding in favor of David on his state law assault and battery claims would mean that Deputy Ray used force improperly, while David's conviction for resisting arrest dictates the opposite conclusion. In fact, the commentary to K.R.S. § 520.090, the statute under which David was convicted, states that a defense to a charge under that statute "will [] be permitted where the officer used more force than is reasonably necessary to effect the arrest so that his conduct constitutes an assault on the

person arrested." Ky. Rev. Stat. Ann. §520.090 (1974 commentary). Thus, a finding in David's favor on the state law assault and battery claims would imply the invalidity of his conviction under K.R.S. § 520.090, a finding barred by the legal precedent discussed above.

Many district courts applying Kentucky law have reached the conclusion that a successful assault or battery claim would necessarily invalidate a conviction of resisting arrest. *See Everage*, 800 F.Supp.3d at 770 (holding that plaintiff's conviction under Ky. Rev. Stat. § 520.090 foreclosed assault and battery claims against the arresting officer); *Dobson v. Sandidge*, 2021 WL 707657, at *3 (W.D. Ky. Feb. 23, 2021) (staying the plaintiff's assault and battery claims pending resolution of the state charges for resisting arrest because a favorable judgment would provide a defense to the charge under Kentucky law); *Lacer v. Pickard*, 2011 WL 2940721, at *2 (W.D. Ky. July 19, 2011) (staying consideration of the plaintiff's excessive force, assault, and battery claims because a favorable judgment would "undoubtedly impact the prosecution's success" as to the resisting arrest charge under K.R.S. §520.090); *Thomas*, 2022 WL 989011, at *2 (holding that the plaintiff's state conviction for resisting arrest "would foreclose battery as to the pre-arrest altercation."). As such, the Court will grant summary judgment in the Franklin County Parties' favor on the assault and battery claim, as well. However, the dismissal of this claim will similarly be without prejudice, for the reasons stated above.

**C. Negligent Supervision under Kentucky Law**

David's remaining claim seeks to hold Sheriff Chris Quire liable under a theory of supervisory liability. The parties all agree that Sheriff Quire was not present on the scene of either traffic stop, and thus Quire himself did not personally use any force on David. Rather, David alleges in his Complaint that Sheriff Quire knew that Deputy Ray "overreacted to events, was violent, [and] used unnecessary and excessive force," but nevertheless "turned him loose on unsuspecting citizens traveling through Franklin County." (R. 1 at 5.) Thus,

David seeks to impose liability on Sheriff Quire for negligently hiring, training, and supervising Deputy Ray. (R. 109-1 at 12-13.)

To maintain a claim "based upon [] negligent hiring, training, retention, or supervision" against Sheriff Quire, there must first be a finding that that Deputy Ray "committed a tort (either intentionally or negligently); otherwise, there is no basis to support liability and damages." *City of Paintsville v. Haney*, 718 S.W.3d 812, 839 (Ky. 2025) (citing *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 727–30 (Ky. 2009)). As the Court has already determined herein, Deputy Ray may not be subject to liability on David's claims. Accordingly, David cannot succeed on the claim against Sheriff Quire "as even if the governmental entities were negligent regarding the hiring, training, retention, or supervision" of Deputy Ray, "such failure did not result in any" legally cognizable harm to David. *Haney*, 718 S.W.3d at 839. Thus, the Franklin County Parties are entitled to summary judgment on David's negligence claim, as well.

**D. Indemnity**

Finally, the Court must address the cross-motions for summary judgment as to the Third-Party Complaint. The Franklin County Parties assert in their Third-Party Complaint that, to the extent the Franklin County Parties are liable to David on his state law claims, the City Officers "were the primary and efficient cause" of those injuries. (R. 55 at 8.) Thus, the Franklin County Parties seek indemnification from the City Officers and moved for summary judgment on that claim. (R. 96.) The City Officers, however, assert in their motion that a necessary prerequisite for indemnity is liability, and the Franklin County Parties are not liable to David for any of his claims. (R. 93.)

In Kentucky, indemnity "is available to one exposed to liability because of the wrongful act of another with whom he/she is not *in pari delicto*." *Deneger v. Hall Contr. Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). More specifically, indemnity is available in two

situations: (1) where the party seeking indemnity was only constructively liable, and the other party was the active tortfeasor, and (2) where both parties have some fault, but one party "was the primary and efficient cause of the injury." *Id.* (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co.*, 77 S.W.2d 36, 39 (Ky. 1936)). It follows then that when the party seeking indemnity has not been held liable, that party cannot obtain indemnity, as there is no claim to indemnify. *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) ("In addressing Kentucky's common law indemnity claim, courts have repeatedly recognized liability as a prerequisite.").

At this juncture, the Court has determined that the Franklin County Parties are not liable for David's claims for the reasons stated at bar. With no underlying liability, the Franklin County Parties cannot seek indemnity from the City Officers, as there is no blame to shift, so to speak. The Franklin County Parties impliedly concede this point, using contingent phrases such as "to the extent that [they] bear any common law liability," "if [they] are exposed to liability," and "in the event the Court denies their Motion for Summary Judgment" with respect to liability." (R. 96-1 at 11–13.) Further, the Franklin County Parties explicitly note that their Motion with respect to indemnity has been tendered in the alternative, in the event that the Court denied their motion against David. (R. 96 at 1.) As the Court is granting the Franklin County Parties Motion for Summary Judgment against David, their Motion for Summary Judgment against the City Officers has been rendered moot. Conversely, the City Officers correctly contend that they are not subject to indemnification, as the Franklin County Parties have failed to establish liability as a necessary prerequisite. As such, with respect to the indemnity issue the Court will deny the Franklin County Parties' Motion for Summary Judgment (R. 96) as moot and grant the City Officers' Motion for Summary Judgment. (R. 93.)

## IV. CONCLUSION

Based on the foregoing, it is hereby ORDERED that:

1. The Third-Party Defendants' Motion for Summary Judgment (R. 93) is GRANTED;
2. The Third-Party Defendants' Motion in Limine (R. 94) is DENIED as moot;
3. The Defendants' Motion for Summary Judgment against the Plaintiff (R. 95) is GRANTED;
4. The Defendants' Motion for Summary Judgment against the Third-Party Defendants (R. 96) is DENIED as moot;
5. The Defendants' Motion in Limine (R. 97) is DENIED as moot;
6. Judgment will be entered contemporaneously with this Opinion and Order.

This 21st day of August, 2026.

**Signed By:**
***Karen K. Caldwell***
**United States District Judge**